**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cecilia Shortman, | No. CV-14-08087-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Yvette Roubideaux, et al., | |
| Defendants. | |

Defendants Yvette Roubideaux, Acting Director, United States Indian Health Service ("IHS"); Sylvia Burwell, Secretary, United States Department of Health and Human Services ("HHS"); and United States of America have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and Rule 12(b)(6). Doc. 14. The motion is fully briefed.[1] For the reasons that follow, the Court will deny the motion.[2]

**I.   Background.**

Plaintiff Cecilia Shortman alleges that IHS was negligent in the processing of her application for care, forcing her to choose between death and massive personal debt of $386,640. Doc. 10 at 4. Shortman is an enrolled member of the Hopi Tribe, a federally recognized Indian tribal government. *Id.* at 2. Shortman was diagnosed at an early age

---

[1] In the future, briefs filed by Plaintiff's counsel should comply with the font size requirements of LRCiv 7.1(b)(1).

[2] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

with a rare life-threatening illness that causes excessive bleeding and results in death if not properly treated. *Id*. at 5.

Members of federally-recognized Indian tribes, including Shortman, are eligible for direct services care by IHS, which includes treatment from a primary care physician and medications when prescribed by IHS staff. *Id*. at 6. Throughout most of her life, Shortman received direct care through IHS. *Id*. Shortman has also received care through "contract health services," or CHS. *Id*. CHS care is available for matters that are specialized and cannot be treated within an IHS direct services program. *Id*.

Shortman was able to acquire her needed medications through an insurance program offered by her employer, Hopi Grant Schools, but coverage for the medications ended on July 1, 2012. *Id.* at 7-8. Shortman applied for coverage through IHS beginning on that date, and IHS informed her that her care and medications would need to be coordinated through CHS. *Id*. CHS contained additional eligibility restrictions: eligible Indians must exhaust all other "alternative resources," the patient must be an eligible Indian residing within a specified "contract health service delivery area," and care must be within one of the medical "priorities." *Id*. As of July 1, 2012, Shortman had no other alternate resources to cover the medications she needed. *Id*. Shortman also claims that she lived within the delivery area for CHS coverage and that the care and medications at issue were included within CHS priorities. *Id*.

Shortman provided notice to the Hopi Health Care Clinic ("HHCC"), a program operated by IHS, that she would have no alternative resources and would need coverage through IHS beginning July 1, 2012. *Id*. at 9. Shortman alleges that HHCC had all the information needed to approve coverage for Shortman's medications beginning July 1, 2012. *Id*. Shortman did not receive her medication by July. *Id*. at 9-10. She began cutting her dosages back in order to spread her medicine further. *Id*. Staff from the Tribal school, the Tribal School Plan, the trustees, and Walgreens Infusion Services, Inc., grew concerned for Shortman's life and agreed to advance the cost of the July medicine until IHS could complete its eligibility process. *Id*.

In August 2012, Shortman still had not heard from IHS. Walgreens and the Trustees again agreed to cover the cost of Shortman's medications while IHS completed its eligibility evaluation. *Id*. By the end of September, Shortman still had not heard from IHS; Walgreens and the Trustees were growing concerned with continuing to fund her medications. *Id*. at 10-11. On September 27, 2012, Shortman turned to the White House for help. *Id*. Representatives from the White House contacted IHS concerning Shortman's application for medication. *Id*. That day, IHS completed the eligibility review process and determined that Shortman was eligible for her medication. *Id*. By that point, Walgreens, unaware of the decision at IHS, had advanced a month's supply of medicine for delivery at the Hopi clinic. *Id*.

Shortman alleges that throughout this time period she was never provided a written explanation of the eligibility determination, an explanation of the scope of the approval, an explanation of her appeal rights, or an explanation of the delay in approving her medicine. *Id*. at 11-12.

On July 25, 2013, Shortman filed a Form 95 seeking to resolve her claims through the administrative claim process afforded under the Federal Tort Claims Act ("FTCA"). *Id*. at 14. HHS acknowledged receipt of Shortman's administrative claim on August 2, 2013, and requested certain documentation. In a letter dated August 8, 2013, Shortman responded to HHS's request for additional information and amended her Form 95. *Id*. This letter also requested certain documents and information relating to Shortman's request for coverage. *Id*. HHS confirmed receipt of Shortman's materials on August 9, 2013, and noted that they were sufficient to satisfy the HHS request at the time. *Id*. HHS has failed to accept or reject Shortman's administrative claims as set forth in Form 95. *Id*. Shortman seeks to recover more than $386,000 for which she allegedly became liable as a result of Defendants' misinformation and delay. *Id.* at 36.

**II.    Standard of Review.**

Defendants' motion is filed under Rule 12(b)(1) and argues that the Court lacks subject matter jurisdiction under the FTCA. "With a 12(b)(1) motion, a court may weigh

the evidence to determine whether it has jurisdiction." *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005). But where the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment. *Id.*

The parties each have attached factual declarations to their memoranda. Docs. 14-1, 17-1, 24-1. These declarations reveal factual disputes as to the actions Plaintiff and Defendants took before July 1, 2012, whether and when Plaintiff missed appointments, what letters were or were not sent and received, and similar issues. These factual disputes apply not only to the jurisdictional issues raised by Defendants, but also to the merits. Defendants contend, for example, that Plaintiff is not entitled to coverage for her medication costs under the applicable regulations because she missed appointments and otherwise failed to procure advance approval.

The Court cannot resolve these factual disputes on the present limited record. Consistent with the direction in *Autery*, the Court will apply a summary judgment standard to this motion. The Court will review factual issues in the light most favorable to Plaintiff and make decisions only on the basis of undisputed facts.

Applying this standard, the Court cannot find a present lack of subject matter jurisdiction. This does not mean that the Court will be unable eventually to resolve the jurisdictional arguments under a Rule 56 standard. It may be that discovery will enable the parties to present evidence that will allow the Court to rule on the jurisdictional issues as a matter of law. The present decision, therefore, does not foreclose summary judgment arguments on the same issues at a later date.

**III. Analysis.**

**A. State or Tribal Law.**

The FTCA grants district courts exclusive jurisdiction over claims against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission

occurred." 28 U.S.C. § 1346(b)(1). Plaintiff seeks to hold Defendants liable under the FTCA based upon Arizona and Hopi tribal law. Doc. 10 at 26-33. Defendants argue that the "law of the place" means state law, not tribal law, and that Plaintiff's claims under Hopi law must be dismissed even though the alleged negligence arose within the boundaries of the Hopi reservation. Doc. 14 at 13, n. 17.

There is no controlling precedent on whether tribal law may be applied as the "law of the place" under the FTCA. While the Ninth Circuit has applied state law to FTCA actions arising on Indian land, it has not addressed whether tribal law may be used as "the law of the place." *See Seyler v. United States*, 832 F.2d 120 (9th Cir. 1987) (applying state law in an FTCA suit arising on an Indian reservation without discussing tribal law); *Marlys Bear Med. v. U.S. ex rel. Sec. of Dept. of Interior*, 241 F.3d 1208 (9th Cir. 2001) (same). Three district courts in this circuit have addressed the issue, reaching differing decisions. *See Quechan Indian Tribe v. United States*, 535 F. Supp. 2d 1072 (S.D. Cal. 2008); *Ben v. United States*, No. CV 04-1850-PCT-PGR, 2007 WL 1461626, at *1 (D. Ariz. May 16, 2007); *Bryant ex. Rel. Bryant v. United States*, 147 F. Supp. 2d 953 (D. Ariz. 2000).

The Court need not resolve this question. Plaintiff has the burden of proving jurisdiction under the FTCA. Although she contends that Hopi and Arizona law apply, she cites only Arizona law in support of her arguments. Doc. 17 at 5-12. The Court accordingly will confine its analysis to Plaintiff's Arizona-law arguments.

### B.    Arizona Tort Law.

To recover under the FTCA, Plaintiff must show that the government's actions, if committed by a private party, would constitute a tort in Arizona. *Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995); *see also Lomando v. United States*, 667 F.3d 363, 373 (3rd Cir. 2011) ("[T]he United States is liable only to the extent that in the same circumstances the applicable local law would hold 'a private person' responsible."); *Chen v. United States*, 854 F.2d. 622, 626 (2nd Cir. 1988) ("Thus, for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against

a private citizen' recognized in the jurisdiction where the tort occurred."). "The breach of a duty created by federal law is not, by itself, actionable under the FTCA." *Love*, 60 F.3d at 644 (citing *Baker v. United States*, 817 F.2d 560, 566 & n.6 (9th Cir. 1987)). Defendants assert that Plaintiff has failed to identify an Arizona law under which a private person would be held liable for engaging in the same acts as the United States. Doc. 14 at 12.

Plaintiff points to Arizona negligence law. Docs. 10, ¶ 10; 17 at 5. She seeks damages under the FTCA "for the negligent acts of omissions of federal employees acting within the scope of their duties." Doc. 17 at 5. Plaintiff points to two specific aspects of Arizona law: the Arizona common law claim for negligent delay in resolving insurance applications, and A.R.S. § 20-3153.[3] Doc. 17 at 7.

The FTCA makes the United States liable "in the same manner and to the same extent as a private individual *under like circumstances*." 28 U.S.C. § 2674 (emphasis added). The Supreme Court has explained that "the words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield." *United States v. Olson*, 546 U.S. 43, 46 (2005) (emphasis in original). For example, the government might be liable under the FTCA for negligent operation of a lighthouse because "[p]rivate individuals, who do not operate lighthouses, nonetheless may create a relationship with third parties that is similar to the relationship between a lighthouse operator and a ship dependent on the lighthouse's beacon." *Id.* at 47. "[T]he test established by the [FTCA] for determining the United States' liability is whether a private person would be responsible for *similar negligence* under the laws of the State where the acts occurred." *Rayonier Inc. v. United States*, 352 U.S. 315, 319 (1957) (emphasis added).

Plaintiff's first argument – that Arizona law provides a claim of negligent delay for conduct analogous to Defendants' actions in this case – rests upon *Cont'l Life & Acc.*

---

[3] Plaintiff cites A.R.S. § 20-3152, but this is a preliminary provision. An insurer's liability for delay in providing benefits is addressed in § 20-3153.

- 6 -

*Co. v. Songer*, 603 P.2d 921 (Ariz. Ct. App. 1979). *Songer* held that an insurance company which accepts an application for insurance, and a premium payment, must act within a reasonable time to either accept or reject the application and may be liable in tort for damages caused by unreasonable delay. The Arizona Court of Appeals looked to several sources for the duty applied in *Songer*, including the duty of fair dealing imposed by law on insurance companies that enter into contracts with their insureds, the fact that the insurance company had accepted payment of a premium, the fact that insurance companies are part of a regulated industry that affects the public interest, and considerations of consumer protection. *Id.* at 929-30.

On the present limited record, the Court cannot conclude that the Arizona tort of negligent delay would be inapplicable to Defendants' conduct if undertaken by a private person or entity in Arizona. Defendants emphasize that IHS medical services are not an entitlement, and that the availability of such services depends on the amount of money appropriated by Congress each year. Defendants also emphasize that IHS does not compensate individuals for health care costs, especially when approval is not received in advance and where individuals "self-refer" themselves to other medical providers. Plaintiff claims, however, that her condition is life-threatening and a priority that would have been covered by IHS even with its limited funding, that she sought advance approval for payment of the costs of her medication, and that she and her advisors received inaccurate information from IHS that interfered with their ability to procure IHS coverage for Plaintiff's medications.

Defendants appear to assert that Plaintiff's medications were in fact approved and provided through IHS beginning in September 2012, and have been provided directly by IHS since that date. Doc. 14-1. Although it appears true that IHS is not an insurer in the traditional sense as was the defendant in *Songer*, it also appears that IHS had sufficient funding to cover Plaintiff's life-saving medications in 2012, ultimately agreed to provide those medications directly, and nonetheless caused Plaintiff to incur substantial expense in order to remain alive during the period of IHS's delay. The Court finds IHS's

relationship with Plaintiff to be arguably analogous to that of an insurance company. IHS appears to have had the financial ability to cover the cost of Plaintiff's medications and, given the life-saving necessity of those medications, perhaps the legal obligation to cover them. It is true that Plaintiff had not paid a premium to IHS as had the plaintiff in *Songer*, but that was not the only consideration relied upon by the Arizona Court of Appeals. Other considerations seem relevant here: IHS certainly is a health-care provider that affects the public interest, and considerations of consumer protection would suggest that IHS had a duty to avoid detrimental delay. *Songer*, 603 P.2d at 929-30.[4]

Thus, on the basis of the preliminary record in this case, the Court cannot conclude that Plaintiff is unable to identify an Arizona law under which a private person would be liable for the conduct allegedly engaged in by Defendants. The fit between Defendants' alleged conduct and the Arizona tort of negligent delay is not perfect, but *Olson* suggests that it need not be perfect, provided it is sufficiently similar. 546 U.S. at 46-47. At this point, the Court finds the tort of negligent delay to be sufficiently similar.

The Court is more doubtful of Plaintiff's other theory. Although A.R.S. § 20-3153 does establish health care insurer liability for damages caused by a delay in approving coverage, it is a statutory remedy. Indeed, the statute makes clear that a party bringing a claim under § 20-3153 may not assert a tort claim for the same conduct. A.R.S. § 20-3152(D). The Supreme Court has made clear that the FTCA "authorizes private *tort actions* against the United States[.]" *Olson*, 546 U.S. at 44 (emphasis added). The FTCA waives sovereign immunity for conduct which, under the relevant local law, would make a private person "liable in tort." *Id.* Plaintiff has cited no authority for the proposition that the FTCA applies to state statutory causes of action.[5]

---

[4] In addition, the Arizona Supreme Court has expressly left open the question of whether payment of a premium is necessary for the tort of negligent delay. *Hill v. Chubb Life Am. Ins. Co.*, 894 P.2d 701, 708 n.11 (1995).

[5] Plaintiff also appears to suggest that the Arizona tort of negligence per se is analogous. Doc. 17 at 10. Plaintiff cites cases where Arizona courts have considered federal statutes as possible sources of the standard of care in a claim of negligence per se, but identifies no Arizona case which has suggested that the IHS regulations identified by Plaintiff (42 C.F.R. §§ 136.12, 136.25) – which set no time limit for responding to a

### C. Due Care Exception.

Defendants also argue that Plaintiff's claims are barred by the due care exception to the FTCA. Doc. 14 at 17; *see* 28 U.S.C. § 2680(a). Defendants concede that they have the burden of proof on this exception. Doc. 26 at 2. Defendants' due care arguments involve many of the issues as to which there are factual disputes in the declarations and documents provide by the parties. Because Defendants have not shown as a matter of undisputed fact that the due care exception applies, the Court will not dismiss Plaintiff's claim on this basis.

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Doc. 14) is **denied**.
2. Plaintiff's motion for jurisdictional discovery (Doc. 25) is **denied as moot**.

Dated this 20th day of January, 2015.

_____
David G. Campbell
United States District Judge

---

request for services – would provide a basis under Arizona law for negligence per se. *See also Delta Sav. Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001) ("To bring suit under the FTCA based on negligence per se, a duty must be identified, and this duty cannot spring from a federal law. The duty must arise from state statutory or decisional law, and must impose on the defendants a duty to refrain from committing the sort of wrong alleged here.").

- 9 -